**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JAMES F. GORMAN, IV,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF TISBURY; OFFICER PATRICK SOUZA in his individual capacity; SERGEANT EDWARD ST. PIERRE in his individual capacity; JOHN DOES I, II, III, IV, in their individual capacities; MARTHA'S VINEYARD TIMES; CHIEF BRUCE MCNAMEE in his individual capacity,<br><br>    Defendants. | CIVIL ACTION NO. 1:25-cv-12869-MJJ<br><br>DEMAND FOR JURY TRIAL |

## PLAINTIFF'S AMENDED COMPLAINT

1. Plaintiff James Gorman initiated this action on September 4, 2025, in Dukes County Superior Court in the Commonwealth of Massachusetts. Former Defendant Town of Edgartown removed the action to the United States District Court for the District of Massachusetts on October 2, 2025, pursuant to 28 U.S.C. § 1441(a).

2. Defendant Town of Tisbury filed a motion to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 9, 2025.

3. The Court granted Plaintiff leave to file an amended complaint following a status conference held on November 5, 2025.

## CONDITION PRECEDENT

4. Plaintiff presented his claims in writing, as required by Massachusetts General Laws ch. 258 § 4, to the Town of Tisbury's Town Administrator on September 3, 2025.

1

**NATURE OF THE ACTION**

5.      This case originates from one man's attempt to do the right thing, and a police department's relentless effort to punish him for it. Plaintiff James Gorman ("Plaintiff" or "Mr. Gorman") found a FedEx package on the side of the road in Edgartown, Martha's Vineyard, and attempted to return it, but a series of unfortunate events, coupled with Defendants' concerted action, contorted his well-meaning intent into wrongdoing. Instead of thanking Mr. Gorman for discovering the lost package, the Tisbury Police Department ("Defendant Town of Tisbury") harassed Mr. Gorman with aggressive questioning on three separate occasions, accusing him of stealing the package. The baseless accusations soon reached the Edgartown Police, whose Chief of Police Bruce McNamee ("Defendant McNamee") falsely stated to the Martha's Vineyard Times ("Defendant Martha's Vineyard Times"), that Mr. Gorman had been charged with larceny when, in fact, he had not. Defendant Martha's Vineyard Times then published a defamatory article riddled with falsities without contacting Mr. Gorman for comment and without doing even the most basic fact-check. Mr. Gorman was confused: why did the police think he would steal a pair of sneakers that had been repeatedly run over, and that were not even his shoe size? Why did the police not talk to FedEx and learn that FedEx had asked Mr. Gorman to help them? Unfortunately, this was not the end of Mr. Gorman's dealings with the Tisbury Police. The lost package was just the beginning of several unsavory encounters with officers from the Tisbury Police Department. During one encounter, Mr. Gorman was subject to the use of excessive force by Officer Patrick Souza ("Defendant Souza"). On another occasion, the Tisbury Police unlawfully searched his home under the guise of a "wellness check." Now, Mr. Gorman seeks to vindicate his constitutional and statutory rights, and brings additional claims against Defendant Martha's Vineyard Times, Defendant McNamee, and Defendant St. Pierre for defamation.

**PARTIES**

6.      Plaintiff James F. Gorman, IV ("Plaintiff" or "Mr. Gorman") is a natural person and resident of Weston, Massachusetts. Mr. Gorman is a seasonal resident of Martha's Vineyard.

7.      Defendant Town of Tisbury ("Town of Tisbury" or "Defendant Town of Tisbury") is a municipality located on the island of Martha's Vineyard in the Commonwealth of Massachusetts. At all times relevant to this action, Defendant Officer Patrick Souza ("Officer Souza" or "Defendant Souza") and Defendant Sergeant Edward St. Pierre ("Sgt. St. Pierre" or "Defendant St. Pierre") were employed by the Tisbury Police Department. Upon information and belief, Defendant Souza is no longer employed by the Tisbury Police Department.

8.      Defendants John Does I, II, III, and IV ("Defendants John Does I, II, III, and IV") were, at all times relevant to this action, employed as officers by the Tisbury Police Department and the Town of Tisbury. The true names of Defendants John Does I, II, III, and IV are unknown to Plaintiff.[1]

9.      Defendant Martha's Vineyard Times ("Defendant Martha's Vineyard Times") is an independently owned newspaper published by the MV Times News Corporation, incorporated in the Commonwealth of Massachusetts. Martha's Vineyard Times publishes both online and in print, maintains offices, and conducts business in Massachusetts.

10.     Defendant Bruce McNamee ("Defendant McNamee") is the former Chief of the Edgartown Police Department. At all times relevant to this action, Defendant McNamee was employed by the Edgartown Police Department and was a resident of Martha's Vineyard,

---

[1] Upon information and belief, the true names of Defendants John Does I, II, III, and IV are known to Defendant Town of Tisbury. Plaintiff will amend his Complaint with the true names of Defendants John Does I, II, III, and IV once he is able to learn their true names through discovery.

Massachusetts. Upon information and belief, McNamee retired from the Edgartown Police Department in 2024.

**JURISDICTION AND VENUE**

11.     Plaintiff initially filed his Complaint in Dukes County Superior Court on September 4, 2025. Former Defendant Edgartown removed the action from the Dukes County Superior Court on October 2, 2025, pursuant to 28 U.S.C. § 1441.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, specifically 42 U.S.C. § 1983 and the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant Town of Tisbury because it is a municipality within the Commonwealth of Massachusetts.

14.     This Court has personal jurisdiction over Defendant Martha's Vineyard Times because it is incorporated in, and has its principal place of business in, the Commonwealth of Massachusetts.

15.     This Court has personal jurisdiction over Defendants Souza, St. Pierre, and McNamee because, among other things, Defendants Souza, St. Pierre, and McNamee reside in the Commonwealth of Massachusetts and have caused injury within the Commonwealth of Massachusetts.

16.     Venue is proper in this district under 28 U.S.C. § 1441(a) because this district embraces the place where Plaintiff initially filed this action. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because all the violations of Plaintiff's rights alleged herein occurred in this district.

**STATEMENT OF FACTS**

17.    Mr. Gorman is a longtime resident of Martha's Vineyard, splitting his time seasonally between Martha's Vineyard and Weston. He is a fourth-generation fisherman on the island and is well-known throughout the island and Cape Cod as a great mechanic. In May 2023, Mr. Gorman worked as an independent contractor for Budget/Avis and was responsible for the maintenance of their fleet of vehicles, providing his services from Hanover to Martha's Vineyard.

18.    Budget leased its vehicles to FedEx contractors when FedEx was short on delivery trucks. Mr. Gorman was never directly employed by FedEx, though his work sometimes required him to interact with FedEx employees and contractors using Budget/Avis vehicles. To perform maintenance on the Budget fleet, Mr. Gorman often moved vehicles to and from FedEx-associated sites, including the major FedEx hub in Middleborough, Massachusetts, and other contractor locations on Martha's Vineyard.

19.    The delivery contractors regularly left packages behind in the Budget trucks at the end of the day. Budget had a policy to not move any trucks with packages left behind by a contractor, because Budget was not responsible for the packages. Instead, Budget's policy was to contact the person named on the contract to inform them that they left items behind in the vehicle and to determine what to do with the package.

**Mr. Gorman Discovers a Stray Package While Driving in Edgartown**

20.    On the evening of May 20, 2023, while driving on Airport Road in Edgartown after leaving the Martha's Vineyard FedEx drop-off location, Mr. Gorman saw a package that had clearly been run over several times on the side of the road. Recognizing it as a FedEx

package, Mr. Gorman pulled over and picked up the package. The package had been damaged to the point that a pair of sneakers could be seen through the tear.

21.     Mr. Gorman's point of contact for lost or abandoned FedEx packages on Martha's Vineyard was Mark Bergeron, an employee of the FedEx contractor on Martha's Vineyard. Mr. Gorman contacted Mr. Bergeron to report that he had found a package on the side of the road and to ask where Mr. Gorman should return it.

22.     Using the tracking number on the package, Mr. Bergeron determine that the package was an outgoing return and instructed Mr. Gorman to bring the package to the regional sorting hub in Middleborough.

23.     Mr. Bergeron and Mr. Gorman agreed that Mr. Gorman would bring the package to the Middleborough facility the next time he was there. Mr. Gorman frequently travelled to the Middleborough facility to service vehicles there, and both men were aware that he Middleborough facility was larger, more secure, and better-staffed than the Martha's Vineyard location.

24.     Mr. Gorman placed the package inside a large yellow hardtop tote that he used to store his tools. His intention, at all times, was to keep the package safe until he could return it to the FedEx facility in Middleborough. Mr. Gorman never opened the package. He simply picked up the package from the side of the road and placed it inside his tool tote for the purpose of returning it to FedEx.

25.     After he finished his work for the evening, Mr. Gorman returned to the harbor where his boat was located. He placed the tool tote onto his boat and took the ferry to the Cape, as he had plans to meet a friend in Boston.

**<u>Mr. Gorman Loses His Car, His Dogs, and His Boat</u>**

26.     When Mr. Gorman got off the ferry, he picked up a vehicle and began driving north to Boston. His two dogs, Chili and Pickles, were in the car with him.

27.     The car ran out of gas soon after he crossed the Sagamore Bridge. Mr. Gorman came to a stop on the shoulder of the highway and decided to walk to a nearby gas station to hopefully purchase some gas and refuel the car. When he returned to the vehicle, he discovered that it had been towed along with his two dogs inside.

28.     Unable to locate his car or his dogs, Mr. Gorman spent the night in Sandwich and planned to resume looking for them in the morning. The following morning, he learned that the police had towed and impounded his car and dropped his dogs off at Kingston Animal Control. Mr. Gorman was unable to pick up his dogs until Monday morning, because the weekend volunteer was not permitted to release animals to their owners without the Animal Control Staff. Mr. Gorman then travelled back to Martha's Vineyard to spend the rest of the weekend there while he waited to pick up his dogs on Monday.

**<u>Mr. Gorman is Subject to Unnecessary and Aggressive Questioning by Multiple Police Departments</u>**

29.     While dealing with the stress of trying to get his dogs back, Mr. Gorman received a phone call from a friend who informed him that his boat had come untied and had been found drifting through the harbor. His friend told him that the Defendant Tisbury Police had his boat, so Mr. Gorman went to the Tisbury Police Department to retrieve it.

30.     Outside the police station, Defendant Officer Patrick Souza questioned Mr. Gorman, at first about his boat, and then about contents of the yellow tool tote, including the package. Mr. Gorman became aware that officers had boarded his boat, opened his closed tool tote and gone through its contents without his permission.

31. Mr. Gorman explained to Officer Souza that he intended to return the package to the FedEx facility in Middleborough the next time he travelled there for work, but that his plans had been derailed by his car and dogs being impounded.

32. Officer Souza expressed little interest in Mr. Gorman's explanation. He shifted his line of questioning, aggressively and repeatedly asking about matters unrelated to the package, such as the FedEx facility's security, building access, cameras, delivery protocols, and where packages are stored. Mr. Gorman was unable to answer these questions because he is not a FedEx employee and does not know the FedEx's policies and procedures.

33. Officer Souza told Mr. Gorman he would "let [him] go for now," implying unwarranted suspicion despite Mr. Gorman's transparency and cooperation. Mr. Gorman retrieved his boat and headed home. He inspected his tool tote and found that the package, along with several of his tools and an air compressor, was missing. Upon information and belief, these items were taken by Defendant Town of Tisbury and/or Defendant Souza.

34. A few days later, Defendant St. Pierre called Mr. Gorman and made similar inquiries to those of Officer Souza, to which Mr. Gorman provided the same answers. Mr. Gorman was later informed by acquaintances at the FedEx facility in Middleborough that Defendant St. Pierre had also contacted various FedEx contractors to ask them about Mr. Gorman, but who could not answer his questions because they knew Mr. Gorman simply as "the mechanic."

35. A few days later, Detective John Dacey from the Edgartown Police Department called Mr. Gorman and questioned him again in the same intrusive manner. Mr. Gorman had grown frustrated that this was now the third time police had contacted him and subjected him to unnecessarily aggressive questioning on the same subject matter. Detective Dacey stated that

8

because Mr. Gorman found the package on Airport Road in Edgartown, the Edgartown Police Department intended to charge Gorman with larceny.

36.     Although Detective Dacey explicitly told Mr. Gorman he would be criminally charged, Mr. Gorman never received any summons, nor any form of notice that he was being charged with a crime. Mr. Gorman was never charged with a crime.

**An Article About the FedEx Package Falsely Reports that Mr. Gorman Was Charged with Larceny**

37.     On or about June 15, 2023, less than a month after Mr. Gorman found the package, an article was published about the incident in the Martha's Vineyard Times. The article, titled "A Boat, a Package, a Mystery," contained a multitude of false statements, including that Mr. Gorman had been charged with larceny for the FedEx package.[2] The article states falsely, among other things, that "the District Attorney's office … have, as of Thursday, issued Gorman a summons for one count of larceny under $1,200."  The article also falsely stated that "[a] stolen FedEx package discovered on an unoccupied boat floating adrift in Vineyard Haven Harbor last month has led to one charge of larceny." This is untrue, because Mr. Gorman had never been charged with larceny, let alone any other crime, in relation to picking up the lost FedEx package (which was falsely referred to as "stolen"). In fact, one month earlier, Mr. Gorman had been informed by officers that he could be charged, but he never received any notice of pending criminal charges. Mr. Gorman then requested a CORI search, which revealed that no charges were actively pending against him.

38.     Defendant Martha's Vineyard Times' article also stated that Mr. Gorman was a "FedEx employee" who intentionally "stole a package to prove company incompetence." These

---

[2] https://www.mvtimes.com/2023/06/15/boat-package-mystery/

9

statements are untrue because Mr. Gorman is not a FedEx employee, nor did he steal a package. Further, the article falsely reports that Mr. Gorman was paid "$11,000" by FedEx, which is again untrue. Mr. Gorman is paid through his contract with Budget/Avis, not FedEx, and he was not paid that amount.

39. While it would be customary for a person to receive a call for comment in an article that centers around them, Mr. Gorman received no such offer. Instead, Defendant Martha's Vineyard Times reported that Defendant Bruce McNamee, Chief of the Edgartown Police, had told the Times that the Mr. Gorman had been issued a summons for larceny. Defendant McNamee made a false and defamatory statement about Mr. Gorman, which Defendant Martha's Vineyard Times repeated and published, all while failing to do the most basic investigation of its truth or falsity.

40. The publication of the article, however, did not surprise Mr. Gorman. The evening prior to its publication, Mr. Gorman received a phone call from Defendant St. Pierre. Defendant St. Pierre informed Mr. Gorman that the newspaper would be publishing an article about him and the FedEx package.

41. Based on his knowledge of the article's forthcoming publication, and upon information and belief, Defendant St. Pierre had spoken with Defendant Martha's Vineyard Times and provided it with some of the false and defamatory information about Mr. Gorman that was ultimately published in the article.

42. Once the story was released, Mr. Gorman contacted the newspaper and demanded a correction due to numerous reporting errors. Mr. Gorman's requests for correction fell on deaf ears, as the article remains published in its original form on Defendant Martha's Vineyard

10

Times' website. The website has over 20,000 digital subscribers and countless other non-subscriber readers who have access to this defamatory article.

### Mr. Gorman is Subjected to Harassment and Unscrupulous Conduct by the Tisbury Police

43.    The Tisbury Police have repeatedly taken advantage of inconsequential situations involving Mr. Gorman as a pretext to harass him under the guise of "law enforcement" activity.

44.    In or around September 2024, Mr. Gorman was driving a motorcycle on Martha's Vineyard when he was pulled over by Defendant Officer Souza for an alleged traffic violation on Northern Pines Road. After pulling Mr. Gorman over, Officer Souza contacted Sergeant St. Pierre for backup. Mr. Gorman was uncomfortable with the situation, so he called his friend, Bart Riley, and placed the call on speakerphone; Mr. Riley was able to listen to the entire encounter unfold.

45.    Mr. Gorman expressed his frustration at the traffic stop, as it was raining and he needed to use the bathroom. Mr. Gorman realized that Officer Souza was the same officer who had aggressively questioned him about the FedEx package, and began asking Officer Souza questions about that investigation. Apparently perceiving Mr. Gorman's demeanor as threatening, Officer Souza restrained Mr. Gorman by placing him in handcuffs. Officer Souza did not attempt to de-escalate the situation before placing Mr. Gorman in handcuffs.[3]

46.    Despite the stop being for a minor traffic violation, Officer Souza aggressively handcuffed Mr. Gorman, twisting Mr. Gorman's fingers, hands, and arms far beyond what was necessary to detain him. Mr. Gorman immediately experienced immense pain and cried out to the point where Mr. Gorman's friend could tell, based solely on what he was able to hear over

---

[3] *See* Mass. Gen. Laws ch. 6E, § 14(a) ("A law enforcement officer shall not use physical force upon another person unless de-escalation tactics have been attempted and failed….").

11

the phone, that Mr. Gorman was being mistreated. Mr. Riley, still listening to Mr. Gorman cry out in pain, yelled over the phone, "This is so inappropriate!"

47.     The handcuffing and force used against Mr. Gorman were excessive and unnecessary in light of the minor, nonviolent nature of the stop. Mr. Gorman experienced severe pain and bruising in his hand as a result of the handcuffing, to the point that he believed his hand had been broken and sought out medical advice.  Mr. Gorman appeared in court the following day for arraignment on the traffic violation charges.

48.     Mr. Gorman received a copy of the police report and learned that significant portions of the encounter had been arbitrarily omitted. The police report contained significant material omissions and selectively quoted portions of the encounter in a way that framed Mr. Gorman in a far worse light and minimized the excessive force that had been used against him. For example, the police report made no mention of Mr. Gorman telling the officers that they were hurting him and that he was in pain. The police report contained significant material omissions.

49.     On or about July 28, 2025, Mr. Gorman sent a letter to the Tisbury Police Department, notifying them of his intent to bring legal action against them and requesting the production and preservation of all records related to the FedEx package investigation and the traffic stop, and any records or documents referencing Mr. Gorman. On or about August 5, 2025, Mr. Gorman received a response from Lieutenant William Brigham, who failed to produce all the records that Mr. Gorman had requested. Lieutenant Brigham's response did, however, reveal that Officer Souza never filled out an incident report documenting the use of excessive force while restraining Mr. Gorman.

50.     On a different occasion, in or around February 2025, officers from the Tisbury Police Department entered Mr. Gorman's home without a warrant under the guise of conducting a "wellness check."

51.     Mr. Gorman's neighbor, Mr. Packer, often supplied Mr. Gorman with heating oil. Mr. Packer arrived at Mr. Gorman's house to fill the home's oil tank, but Mr. Gorman was not home. Mr. Packer, concerned that something had happened to Mr. Gorman, peered inside his windows to see items strewn about the house. Mr. Packer then contacted the Tisbury Police Department to alert them to Mr. Gorman's absence.

52.     Officers from the Tisbury Police Department, Defendants John Does I, II, III, and IV, arrived at Mr. Gorman's house. Mr. Gorman, who has security cameras at his house, was not home when he received a notification from the security system that someone was outside his house. Mr. Gorman then watched live security camera footage of Defendants John Does I, II, III, and IV breaking down the back door of his home and entering with guns drawn.

53.     Despite Mr. Gorman shouting through the security system intercom that he was going to arrive home soon, Defendants John Does I, II, III, and IV entered Mr. Gorman's home and caused damage to his property in the process. Defendants John Does I, II, III, and IV's warrantless search of Mr. Gorman's home went far beyond what was necessary to perform a wellness check. The search lacked any justification, as there was no suggestion or reasonable grounds to believe that Mr. Gorman or anyone inside the home was in need of emergency assistance, let alone with guns drawn.

54.     Defendant Town of Tisbury also coordinated the unlawful removal of the power meter from outside Mr. Gorman's house, resulting in him losing power for nine months.

55.    When Mr. Gorman returned to his home, he discovered that the power meter had been pulled from outside his house and that he was without power. Mr. Gorman called his power company, who explained that they had been called to remove the meter because the exposed pipe for the outdoor shower was a fire hazard. Upon information and belief, the Tisbury Police Department contacted Mr. Gorman's power company to intentionally and unlawfully remove the power meter from his home.

56.    Without any power, the home was unlivable. Mr. Gorman was forced to leave Martha's Vineyard to locate safe housing, despite expecting to reside on Martha's Vineyard for part of the year. As a result, he lost his employment on the island and was unable to earn the income he anticipated earning over the course of those nine months. Mr. Gorman was also unable to rent the home out over the summer, losing out on a significant amount of rental income.

## <u>COUNT I</u>
**Violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments) – Against Town of Tisbury and Patrick Souza (In His Individual Capacity)**

57.    Plaintiff repeats and realleges each of the preceding paragraphs and incorporates them as though fully set forth herein.

58.    Defendant Souza, acting under color of state law and in his capacity as an employee of the Town of Tisbury, deprived Plaintiff of his rights secured by the Fourth Amendment to the Constitution and his due process rights secured by the Fourteenth Amendment.

59.    Defendant Souza made an unreasonable and warrantless search and seizure when they committed a trespass against Plaintiff's personal effects, including but not limited to, boarding Plaintiff's boat, opening the closed tote, and seizing Plaintiff's property, to obtain

14

information. Defendant Souza had no justification or probable cause for these searches and seizures.

60.    Defendant Souza and Defendant Town of Tisbury violated Plaintiff's due process rights by depriving Plaintiff of his protected property interests by seizing his personal property without providing notice and a meaningful opportunity to be heard, or any form of post-deprivation remedy.

61.    Defendant Town of Tisbury was responsible for oversight of the Tisbury Police Department and its officers, including Defendant Souza. Defendant Town of Tisbury caused Plaintiff's constitutional rights to be violated through its deliberately indifferent policies, customs, and established practices, including but not limited to, its failure to train and adequately supervise its officers on conducting searches of personal property, despite the foreseeable consequences of such failure.

62.    Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages as a direct and proximate result of Defendant Souza's violations of Plaintiff's clearly established constitutional rights and Defendant Town of Tisbury's conduct.

63.    Plaintiff seeks all remedies available under 42 U.S.C. § 1983, including compensatory damages, punitive damages, attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

### COUNT II
**Violation of 42 U.S.C. § 1983 (Fourth Amendment) – Against Town of Tisbury and John Does I, II, III, and IV (each in their individual capacity)**

64.    Plaintiff repeats and realleges each of the preceding paragraphs and incorporates them as though fully set forth herein.

65. Defendants John Does I, II, III, and IV, acting under color of state law, deprived Plaintiff of his rights secured by the Fourth Amendment to the Constitution and his due process rights secured by the Fourteenth Amendment.

66. Defendants John Does I, II, III, and IV made an unreasonable and warrantless search and seizure when they entered Plaintiff's home and searched it stem to stern under the guise of a "wellness check." The officers searched Plaintiff's effects, including but not limited to his private bedroom and bathroom. The search went far beyond what was necessary to sufficiently respond to any purported exigency. Defendants John Does I, II, III, and IV had no justification or probable cause for these searches and seizures.

67. Defendant Town of Tisbury was responsible for oversight of the Tisbury Police Department and its officers, including Defendants John Does I, II, III, and IV who illegally entered Plaintiff's home. Defendant Town of Tisbury caused Plaintiff's constitutional rights to be violated through its deliberately indifferent policies, customs, and established practices, including but not limited to, its failure to train and adequately supervise its officers on conducting searches of homes, despite the foreseeable consequences of such failure.

68. Defendants John Does I, II, III, and IV caused property damage to Plaintiff's home, including but not limited to by breaking down the back door into his home and shattering the screen door frame.

69. Defendant Town of Tisbury caused Plaintiff's power meter to be removed from the side of his home, under the auspices of it being a "fire hazard," which resulted in Plaintiff losing power for nine months.

70.    Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages as a direct and proximate result of Defendant's violations of Plaintiff's clearly established constitutional rights and its failure to adequately supervise and train its officers.

71.    Plaintiff seeks all remedies available under 42 U.S.C. § 1983, including compensatory damages, property damages, punitive damages, attorney' fees and costs, pursuant to 42 U.S.C. § 1988.

### COUNT III
**Violation of 42 U.S.C. § 1983 (Fourth Amendment) – Against Town of Tisbury and Patrick Souza (In His Individual Capacity)**

72.    Plaintiff repeats and realleges each of the preceding paragraphs and incorporates them as though fully set forth herein.

73.    Defendant Souza, acting under color of state law and in his capacity as an employee of the Town of Tisbury, deprived Plaintiff of his rights secured by the Fourth Amendment to the Constitution. Defendant Souza violated Plaintiff's right to be free of unreasonable searches and seizures by using excessive force against Plaintiff when arresting him for a minor traffic violation. Instead of acting appropriately with Plaintiff or attempting to deescalate the situation in any way, Defendant Souza unnecessarily handcuffed Plaintiff, causing injury to his hand.

74.    Defendant Town of Tisbury was responsible for oversight of the Tisbury Police Department and its officers, including Defendant Souza. Defendant Town of Tisbury caused Plaintiff's constitutional rights to be violated through its deliberately indifferent policies, customs, and established practices, including but not limited to, its failure to train and adequately supervise its officers on proper handcuffing procedure, handcuffing safety, de-escalation tactics,

17

and the completion of police reports and use of force reports, despite the foreseeable consequences of such failure.

75.    Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages as a direct and proximate result of Defendants' violations of Plaintiff's clearly established constitutional rights.

76.    Plaintiff seeks all remedies available under 42 U.S.C. § 1983 including compensatory damages, punitive damages, attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

**COUNT IV**
**Violation of 42 U.S.C. § 1983 (*Monell* Liability) – Against Town of Tisbury**

77.    Plaintiff repeats and realleges each of the preceding paragraphs and incorporates them as though fully set forth herein.

78.    Plaintiff's constitutional claims are cognizable under 42 U.S.C. § 1983. Plaintiff has been deprived of his constitutionally protected rights secured by the Fourth and Fourteenth Amendments to the Constitution as set forth above.

79.    Defendant Town of Tisbury caused Plaintiff's constitutional rights to be violated through its deliberately indifferent policies, customs, and established practices, including but not limited to, its failure to train and adequately supervise its officers on searches of the home and personal property, the use of force, handcuffing procedures, de-escalation tactics, and accurate record keeping. It also failed to train its officers on the level of justification necessary to conduct a search of the home and the proper way to carry out a wellness check. Its officers repeatedly violated Plaintiff's constitutional rights over a period of years without any correction or discipline by Defendant.

80.     Defendant Town of Tisbury tolerated and fostered this policy and custom of violating the rights of citizens by failing to properly supervise, train, educate, and discipline its police officers. It had a reckless, grossly negligent, and callously indifferent approach to officer training and discipline. Defendant Tisbury Police's inaction in this regard constituted a tacit approval of its employees' misconduct and evinced a blatant disregard for the constitutional rights of citizens.

81.     Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages as a direct and proximate result of Defendant's violations of Plaintiff's clearly established constitutional rights and its failure to adequately supervise and train its officers.

82.     Plaintiff seeks all remedies available under 42 U.S.C. § 1983, including compensatory damages, property damages, punitive damages, attorney' fees and costs, pursuant to 42 U.S.C. § 1988.

## **COUNT V**
### **Defamation – Against Martha's Vineyard Times, Bruce McNamee (In His Individual Capacity), and Edward St. Pierre (In His Individual Capacity)**

83.     Plaintiff repeats and realleges each of the preceding paragraphs and incorporates them as though fully set forth herein.

84.     Defendant Martha's Vineyard Times made false and defamatory statements about Plaintiff in its article, including but not limited to, that Plaintiff had been issued "a summons for one count of larceny under $1,200."

85.     This statement is categorically false, as Plaintiff was never issued a summons for larceny. While Defendants threatened to charge Plaintiff with larceny, no charges were actually filed against Plaintiff.

19

86.    Defendant McNamee provided some of this materially false and misleading information to the Martha's Vineyard Times. This information included, but was not limited to, the false assertion that Plaintiff had been charged with larceny. Defendant McNamee unnecessarily communicated this false information to the Martha's Vineyard Times with, at a minimum, reckless disregard of its falsity.

87.    Upon information and belief, Defendant St. Pierre also provided some of this materially false and misleading information to the Martha's Vineyard Times. Defendant St. Pierre unnecessarily communicated this false information to the Martha's Vineyard Times with, at a minimum, reckless disregard of its falsity.

88.    Defendants purposefully misconstrue Plaintiff's intent, which was to return the package to the Middleborough FedEx facility, by falsely stating that he was issued a summons for larceny. Describing his action as larceny, which requires an intent to permanently deprive an owner of their property, completely mischaracterizes Plaintiff's intent.

89.    Defendant Martha's Vineyard Times unlawfully contorts Plaintiff's actions into a subheading riddled with inaccuracies: "FedEx contract employee tells police he stole at least one package to prove company incompetence." This statement is false, as Plaintiff did not steal a package.

90.    Falsely stating that Plaintiff was charged with larceny was defamatory because it subjected Plaintiff to ridicule, or contempt in the minds of a considerable and respectable segment of the Martha's Vineyard community. Plaintiff resides on a small island, surrounded by a tight-knit community. By making and publishing these false statements, Defendants caused harm to Plaintiff's reputation.

91.     Defendants' statements were defamatory *per se* because they charged Plaintiff with committing the crime of larceny. Not only did Plaintiff never commit any act of larceny, he was never formally charged or accused of larceny. Moreover, Defendants' statements were prejudicial to Plaintiff in his profession, as they accused Plaintiff of committing a crime involving his work. An accusation of such misconduct necessarily implied that Plaintiff was unqualified to engage in his profession.

92.     Once he was made aware of the publication, Plaintiff called Defendant Martha's Vineyard Times to request that they issue a correction to the story or to remove the article entirely; Defendant Martha's Vineyard Times declined to do so. By failing to issue a retraction or correction, Defendant Martha's Vineyard Times has acted with actual malice.

93.     As a direct and proximate result of Defendants' false and defamatory statements, Plaintiff has suffered economic and non-economic damages, including loss of income, injury to his reputation, embarrassment, humiliation, and emotional distress, in an amount to be determined at trial.

## RELIEF SOUGHT

WHEREFORE, Plaintiff James Gorman respectfully requests that this Court grant the following relief:

A.     Judgment in favor of Plaintiff on all counts;

B.     Compensatory damages, economic damages, consequential damages, punitive damages, treble damages, attorneys' fees, and costs in an amount to be proven at trial;

C.     Injunctive relief, including but not limited to, the correction and/or retraction of any defamatory statements published about Plaintiff; and

D.     Any other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues and claims so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.


Dated:         January 16,  2026                    Respectfully submitted,
                                                    JAMES F. GORMAN IV, *Pro Se*


_____

James F. Gorman IV
375 Highland Street
Weston, MA 02493
Phone: 617-899-2083
Email:
emeraldlogisticsma@gmail.com

22

## <u>CERTIFICATE OF SERVICE</u>

I, James F. Gorman, *pro se*, hereby certify that I caused this document to be filed through the ECF system and that it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:            January 16,  2026                    Respectfully submitted,
                                                        JAMES F. GORMAN IV, *Pro Se*

_____

James F. Gorman IV
375 Highland Street
Weston, MA 02493
Phone: 617-899-2083
Email:
emeraldlogisticsma@gmail.com

23