UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES F. GORMAN, IV,<br>      *pro se* Plaintiff,<br><br>v.<br><br>TOWN OF TISBURY;<br>OFFICER PATRICK SOUZA in his<br>Individual Capacity;<br>SERGEANT EDWARD ST. PIERRE in his<br>Individual Capacity;<br>JOHN DOES I, II, III, IV, in their<br>Individual Capacities;<br>MARTHA'S VINEYARD TIMES; and<br>CHIEF BRUCE McNAMEE  in his<br>Individual Capacity,<br>      Defendants. | )<br>)<br>)<br>)<br>)  C.A. NO. 1:25-cv-12869<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF
TISBURY DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## I.      INTRODUCTION

In this matter, the Plaintiff, James F. Gorman IV (the "Plaintiff" or "Mr. Gorman") alleges

that the Tisbury and Edgartown Police Departments and others violated his civil rights and

defamed him based on their investigation of a suspected package theft on Martha's Vineyard, as

well as a subsequent (but unrelated) motor vehicle stop and wellness check.  Defendants, the Town

of Tisbury ("Tisbury") and Tisbury Police Officers, Patrick Souza ("Ofc. Souza") and Sgt. Edward

St. Pierre ("Sgt. St. Pierre") (collectively, the "Tisbury Defendants")[1] partially move to dismiss

Plaintiff's Second Amended Complaint[2] pursuant to Fed. R. Civ P. 12(b)(6).

---

[1] Plaintiff also names John Does I, II, III, and IV, alleged as other Tisbury Police officers. This motion on behalf of the Tisbury Defendants is not made on behalf of the Doe defendants, as those defendants have neither been served nor identified.

[2] This motion responds to the pleading titled "Amended Complaint" filed in this Court on January 16, 2026. The pleading should be more properly titled Second Amended Complaint because Plaintiff had amended his Complaint

1

Plaintiff's latest pleading, the Second Amended Complaint, asserts the following claims:

Count I:      Violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments) vs. Tisbury and Ofc. Souza (in his Individual Capacity)

Count II:     Violation of 42 U.S.C. § 1983 (Fourth Amendment) vs. Tisbury and John Does I, II, III, and IV (each in their Individual Capacity)

Count III:    Violation of 42 U.S.C. § 1983 (Fourth Amendment) vs. Tisbury and Ofc. Souza (in his Individual Capacity)

Count IV:     Violation of 42 U.S.C. § 1983 (*Monell* Liability) vs. Tisbury

Count V:      Defamation vs. Martha's Vineyard Times, Bruce McNamee (in his Individual Capacity) and Sgt. St. Pierre (in his Individual Capacity)

The Tisbury Defendants move to dismiss Counts I, II, and IV entirely, Count V as to Sgt. St. Pierre only, and do not move as to Count III. For the reasons stated in this Memorandum of Law in Support of their Motion to Dismiss, these claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

## II.    ALLEGATIONS AND BACKGROUND

Plaintiff is a seasonal resident of Martha's Vineyard, where the events of this matter are set. Second Amended Complaint ("Compl."), ¶ 17. On May 20, 2023, Plaintiff alleges he discovered a damaged FedEx package on a public roadway in Edgartown, Massachusetts. *Id.* ¶ 20. Plaintiff contacted Mark Bergeron, an employee of a FedEx contractor on Martha's Vineyard, who instructed Mr. Gorman to bring the package to a FedEx facility in Middleborough, Massachusetts. *Id.* ¶ 21-22. Plaintiff placed the package in a tote, then placed the tote in his boat (the "Boat") located in the harbor of Tisbury. *Id.* ¶ 24-25. Rather than returning the package, Plaintiff proceeded towards Boston via ferry and driving a vehicle, but ran out of gas after crossing the Sagamore Bridge. *Id.* ¶ 25-27. Events unrelated to the Tisbury Defendants then unfolded:

---

before, and this motion will refer to the most recent pleading in that manner to differentiate it from the prior Amended Complaint.

Plaintiff's vehicle, with his dogs inside, was towed and impounded; he returned to Martha's Vineyard. *Id.* ¶ 27-28.

In the meantime, Plaintiff's Boat "had come untied and had been found drifting through the harbor" of Tisbury. *Id.* ¶ 29. Tisbury police officers boarded the Boat and opened the tote with the FedEx package. *Id.* ¶ 30. Informed that the Tisbury police had his Boat, Plaintiff went to the Town's police station and was questioned outside by Officer Souza about his Boat and the tote. *Id.* ¶ 30. Plaintiff was not detained nor interrogated inside the station; he retrieved his Boat albeit without the FedEx package, which he believes was taken by Tisbury and/or Souza. *Id.* ¶ 32-33. In the following days, Sgt. St. Pierre of Tisbury and a detective from the Edgartown police department called Plaintiff with questions about the FedEx package. *Id.* ¶ 34-35. Plaintiff alleges that the Edgartown detective advised him of that department's intention to charge the Plaintiff with larceny. *Id.* ¶ 35-36. However, Mr. Gorman was not charged with any crime relative to the FedEx package. *Id.* ¶ 36.

On or about June 15, 2023, the Martha's Vineyard Times published an article about the FedEx package saga. *Id.* ¶ 37. Plaintiff asserts that the article contained false statements, namely that Mr. Gorman had been charged with larceny. *Id.*

In or around September 2024, Plaintiff was pulled over by Ofc. Souza in Tisbury for a traffic violation. *Id.* ¶ 44. Plaintiff "expressed his frustration at the traffic stop," and questioned Ofc. Souza about the FedEx package; Ofc. Souza perceived Plaintiff's demeanor as threatening and restrained Mr. Gorman by placing him in handcuffs. *Id.* ¶ 45. Plaintiff claims that Ofc. Souza's use of force exceeded that which was necessary. *Id.* ¶ 46-47.

In or around February 2025, Plaintiff's neighbor in Tisbury peered inside Mr. Gorham's house and observed that "items [were] strewn about." *Id.* ¶ 51. "[C]oncerned that something had

happened to Mr. Gorman," the neighbor contacted Tisbury police to alert them, who arrived and conducted a wellness check by entering the house. *Id.* ¶ 50-52. Plaintiff claims that the wellness check exceeded what was necessary. *Id.* ¶ 53. At some point thereafter, the power company for this residence removed the power meter. *Id.* ¶ 55.

### III.    ARGUMENT

#### A.  Standard of Review.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive a Rule 12(b)(6) motion, a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986). *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (court should ignore statements "that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021), *quoting Twombly*, 550 U.S. at 555. A mere "possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See Hamann v. Carpenter*, 937 F.3d 86, 90 (1st Cir. 2019) (conclusory allegations of ill will and spite held insufficient to cross plausibility threshold). "Well-pleaded facts must be non-conclusory and non-speculative." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (internal quotation omitted).

**B. Count I fails to State a Claim because Ofc. Souza did not Search and Seize the Boat, and the Tisbury Defendants' Search and Seizure of Plaintiff's Boat adrift in the harbor was protected by the Community Caretaking Doctrine.**

    **a. Plaintiff does not Allege that Ofc. Souza Participated in the Conduct that Allegedly Deprived him of Constitutional Rights, and Tisbury cannot be liable under Section 1983 on a Theory of *Respondeat Superior.***

As an initial matter, Count I fails because it is premised on Ofc. Souza's search and seizure of Plaintiff's Boat, yet the Second Amended Complaint does not allege that it was Ofc. Souza who searched the seized the Boat at all. Count I asserts a claim for Violation of 42 U.S.C. § 1983 (Fourth and Fourteenth Amendments) against Tisbury and Ofc. Souza, based on "boarding Plaintiff's boat, opening the closed tote, and seizing Plaintiff's property, to obtain information." Compl., ¶ 59.  The Second Amended Complaint only alleges that "*officers* had boarded his boat, opened his closed tool tote and gone through its contents without his permission." *Id.* ¶ 30 (emphasis added).  The pleading does not specify which officers boarded the Boat, and it is not alleged that Ofc. Souza was an officer who boarded the Boat. Indeed, the only role that Ofc. Souza is alleged to have had in these events is questioning Plaintiff about his Boat and its contents while outside the Tisbury police station.[3]  *Id.*  This is not enough to support the claim as against Ofc. Souza.  *See Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006), *quoting Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005) ("It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under Section 1983).

Nor can the claim survive as against Tisbury where the basis is the Town's "oversight" of the police department concerning this search of the Boat.  *See Monell v. New York City Dep't of*

---

[3] Nor did either of the two former iterations of Plaintiff's Complaint ever allege that Ofc. Souza boarded the Boat and/or searched its contents, or played any other role in these actions besides informally questioning the Plaintiff.

*Social Services*, 436 U.S. 658, 665 (1978) (a municipality cannot be held liable under Section 1983 on a theory of *respondeat superior*).  Count I therefore fails to state a claim.

### b. The Tisbury Defendants were permitted to Search and Seize the Boat under the Community Caretaking Doctrine.

*Arguendo,* even if the Second Amended Complaint properly and specifically alleged that Ofc. Souza boarded the Boat, seized it, and searched its contents, Count I would still fail because the Tisbury Defendants were protected by the Community Caretaking Doctrine in conducting these actions. To prevail on a claim brought under Section 1983, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law[,]' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013), *quoting Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir.1997).   Here, Plaintiff asserts that his rights under the Fourth and Fourteenth Amendments were violated because Tisbury police officers boarded his Boat, opened his closed tote onboard, and seized his property. Generally, warrantless searches are not permitted under the Fourth Amendment, except for "specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

The community-caretaking doctrine is one of these exceptions, based on police conduct as community protection apart from crime prevention.  *See United States v. Coccia*, 446 F.3d 233, 238 (1st Cir. 2006); *United States v. Sylvester*, 993 F.3d 16, 22 (1st Cir. 2021) ("The community caretaking function 'is one of the various exceptions to the Fourth Amendment's requirement that law enforcement officers have probable cause and obtain a warrant before effecting a search or seizing property.'").   Thus, for example, "law enforcement officers, in 'their role as "community caretakers,"' may 'remove vehicles that impede traffic or threaten public safety and convenience' without obtaining a warrant." *United States v. Rivera*, 988 F.3d 579, 581 (1st Cir.

6

2021).   "When determining whether the officers' actions are protected by the community caretaking exception, we 'look at the <u>function</u> performed by [the] police officer.'"   *Castagna v. Jean*, 955 F.3d 211, 220 (1st Cir. 2020) (emphasis in original).   As long as the function performed by the officer is "distinct from 'the normal work of criminal investigation'" and within "the heartland of the community caretaking exception," the doctrine applies.   *Id,* at 220-21.   "Actions within that heartland include actions taken to 'aid those in distress, combat actual hazards, [and] prevent potential hazards from materializing."   *Id,* at 221.

The community caretaking doctrine applies to the Tisbury Defendants' search and seizure of the Boat. As the Complaint notes, the Boat "had come untied and had been found drifting through the harbor."   Compl., ¶ 29.   For this reason, Tisbury officers boarded the Boat and temporarily took it into their custody until Plaintiff could claim it.   *Id.* at ¶ 29-30.   The function of these actions was not part of a criminal investigation, and were undoubtedly taken to combat and prevent the actual and potential hazards of an unmoored boat drifting through a busy harbor.[4] For this reason, boarding an unmanned boat has long been held to fall within the community caretaker exception. *See United States v. Miller*, 589 F.2d 1117, 1125 (1st Cir. 1978) ("We have no difficulty approving" the boarding of a boat, since "[a] boat, like an automobile, carries with it a lesser expectation of privacy than a home" and it was "a matter of legitimate concern to public safety officials when [a boat] is found abandoned, 250 yards from shore").   Under these circumstances, it was also surely permissible for the Tisbury Defendants to seize the adrift boat by impounding it until Plaintiff could claim it as the vessel's owner.   *Id.* (community caretaking exception justified seizure of abandoned boat); *see also United States v. Vick*, 145 F.4th 191, 198 (1st Cir. 2025) (discussing community caretaking justification for vehicle impoundment).

---

[4] In late May, when this incident occurred, the Steamship Authority ferry travels through Tisbury's Vineyard Haven harbor twenty (20) times daily.  *See* https://www.steamshipauthority.com/schedules.

Once properly boarded and impounded, the Tisbury Defendants were also constitutionally permitted to search the Boat. "Once a vehicle is impounded, the Fourth Amendment further permits police to conduct an 'inventory search' to identify the contents of the vehicle without first obtaining a warrant." *United States v. Davis*, 909 F.3d 9, 17 (1st Cir. 2018). "The purpose of an inventory search is to protect 'the property of the owner ..., the police from claims resulting from lost or stolen property, and the police and the public from dangerous instrumentalities stored inside.'" *United States v. Hardy*, 395 F. Supp. 3d 191, 193-94 (D. Mass. 2019) (quoting *Colorado v. Bertine*, 479 U.S. 367, 373 (1987)). Inventory searches are justified based on community caretaking functions, including, for example, opening a closed container in an impounded vehicle. *See Bertine,* 479 U.S. at 374-75. Where the Tisbury officers were constitutionally permitted to board and impound the adrift Boat, it was thus also permissible to search its contents, including opening closed containers like the Plaintiff's tote. *See Miller,* 589 F.2d at 1126 (police were permitted to search and seize navigational chart on abandoned boat under community caretaking doctrine).

Since the basis of Count I is the Tisbury Defendants' actions in boarding, searching, and impounding the Boat, which was constitutionally permitted under the community caretaking doctrine, this claim fails to state a claim upon which relief may be granted and should be dismissed.[5]

---

[5] The Complaint vaguely alleges that Tisbury's "seizing Plaintiff's property" was unconstitutional, without specifying the property. This argument addresses this claim as to the impoundment of the Boat, but to the extent the claim could be read to refer to the seizure of the FedEx package in the tote: first, the package was not Plaintiff's property, and second, even if it were the officers were still permitted to seize it as part of their search. *See Miller,* 589 F.2d at 1126 (police were permitted to search and seize navigational chart on abandoned boat under community caretaking doctrine).

### C. Count II fails because the Community Caretaker Doctrine Justified the Tisbury Defendants' Entrance into Plaintiff's Residence under the Circumstances.

Just as with the Boat boarding and search, the Tisbury Defendants were justified under the circumstances and the community caretaking doctrine to enter and search Plaintiff's residence.

As with Count I, Count II is asserted as a claim for Violation of 42 U.S.C. § 1983 (Fourth Amendment) against Tisbury and its officers. As provided *supra,* if the function performed by a police officer when entering property is distinct from criminal investigation and done "to 'aid those in distress, combat actual hazards, [and] prevent potential hazards from materializing," then their actions are constitutional under the community caretaking doctrine. *Castagna*, 955 F.3d at 220-21. For this reason, "wellness checks" – when police are called by a third party to check on the wellbeing of a person inside their residence – are often upheld by courts as constitutionally permitted searches. *Id,* at 221; *see also United States v. Ashworth*, 630 F. Supp. 3d 335, 341-42 (D. Mass. 2022); *Hurley v. Curtis*, 786 F. Supp. 3d 277, 283-84 (D. Mass. 2025).

The circumstances of the Tisbury Defendants' entrance into Plaintiff's residence were as follows: in February 2025, Plaintiff's neighbor appeared at Mr. Gorham's house to fill the oil tank when he observed through a window that "items [were] strewn about" inside. *Id.* ¶ 51. "[C]oncerned that something had happened to Mr. Gorman," the neighbor contacted Tisbury police to alert them of the situation. *Id.* The Tisbury police arrived and entered the house, by "breaking down the back door" since Plaintiff was not home. *Id.* ¶ 52. The officers therefore arrived not due to a criminal investigation, but out of a neighbor's concern that "something had happened to Mr. Gorman," as indicated by his absence and the items strewn about inside. This situation suggested that either Plaintiff was inside in need of aid, or that a potential hazard had or would be materializing. *Castagna*, 955 F.3d at 220-21. The Tisbury police could not have

9

obtained a warrant to enter the residence since there was no suspicion of criminal wrongdoing. If the community caretaking doctrine did not permit police to enter a house under these circumstances, then police would be unable to perform their community caretaking duties to render aid or combat potential or actual hazards inside a residence, such as an individual overdosing. *See Ashworth*, 630 F. Supp. 3d at 344; *Hurley*, 786 F. Supp. 3d at 283-84.

Furthermore, it is not alleged that the Tisbury Defendants actually seized any of Plaintiff's property as part of its wellness check visit. The Complaint only alleges that Tisbury officers entered the house and searched it in a manner that "went far beyond what was necessary." Compl., ¶ 53. There is an allegation that Plaintiff's power meter was removed, but that was removed by the power company not the Tisbury police. *Id,* ¶ 55. Thus, the grounds for Count II as an unlawful search and seizure must fail.

### D. A Single Incident of Constitutional Deprivation cannot support Plaintiff's Count IV *Monell* Claim against Tisbury.

A *Monell* claim against a municipality for failure to train or supervise its employees must be based on causation of a constitutional injury. *See Conlon v. Scaltreto*, 158 F.4th 211, 223 (1st Cir. 2025), citing *Monell*, 436 U.S. at 692. A *Monell* claim "requires a three-part showing that (1) the action in question constituted a 'policy' or 'custom' attributable to the municipality; (2) the policy or custom 'actually caused' the constitutional injury; and (3) the municipality acted with a degree of fault that amounts to 'deliberate indifference to the rights of persons with whom the police come into contact.'" *Id.*, quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Due to these "stringent" elements, the conduct of one inadequately trained police officer "will not alone suffice to fasten liability on the city," nor "will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. 378, 390-91.

10

It is therefore well-established that a *Monell* claim may not be based on a single incident of a constitutional deprivation of rights.  *See*, *e.g. Mahan v. Plymouth Cnty. House of Corrs*., 64 F.3d 14, 16–17 (1st Cir. 1995); *see also Santiago v. Fenton*, 891 F.2d 373, 382 (1st Cir. 1989) ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell."); *Brown vs. Brockton*, D. Mass., No. 24-CV-12048-ADB (Sept. 18, 2025) ("Evidence of a single incident of a constitutional deprivation 'is insufficient, in and of itself, to establish a municipal 'custom or usage' within the meaning of Monell.'").

Plaintiff's Count IV is so broadly worded and vague that it is difficult to ascertain its grounds. The claim mentions 1) "searches of the home" and "the proper way to carry out a wellness check" and 2) "the use of force [and] handcuffing procedures," so the claim seems to be based on the traffic stop and wellness check.  Compl., ¶ 79.  For one, these encounters are not the same type of alleged constitutional violation: one instance is an alleged excessive use of force against the person, the other an alleged unnecessary search of property, unrelated to the former and carried out by different officers.  Id. at ¶ 44-46 (Ofc. Souza traffic stop); and ¶ 52-53 (John Doe officers conducted wellness check); *also see Johnson v. City of Brockton*, No. 23-CV-10906-ADB, 2024 WL 169169, at *5 (D. Mass. Jan. 16, 2024) (allowing motion to dismiss where, inter alia, there were no allegations of other instances of similar conduct or failures to discipline similar conduct alleged, such that alleged policy and/or procedure was not so well-settled and widespread).

Mr. Gorman does not allege that the Tisbury police have some long-running pattern of excessive force during traffic stops or pretextual wellness checks.  *See Mahan v. Plymouth Cnty. House of Corrs.,* 64 F.3d 14, 16–17 (1st Cir. 1995) (a "systemic pattern of activity" may support an inference of a municipal custom under *Monell*).  These instances are therefore each a single

11

incident of alleged misconduct. It is not plausible that these actions were done pursuant to one "'policy' or 'custom' attributable to the municipality," since they concern different actions that different policies or customs would govern. *See City of Canton*, 489 U.S. 378, 388. It cannot be said that the "injury or accident could have been avoided if an officer had better or more training," since the incidents were carried out by different officers concerning different functions. *Id.* at 390-91. Plaintiff's allegations are therefore similar to those in *Barker v. Boston*, 795 F. Supp. 2d 117 (D. Mass. 2011), where the claimant alleged a *Monell* claim for failure to train officers on excessive force and failure to discipline officers. Even though these alleged failures arose out of the same shooting incident, this court ruled that such allegations were of two different theories of misconduct, and so dismissed the *Monell* claim due to the single-incident rule. *Barker*, 795 F. Supp. 2d at 124-25. So too here. Since a single incident of constitutional deprivation cannot support a *Monell* claim, this claim should be dismissed.

Alternatively, if the Court interprets Plaintiff's claim to allege multiple instances of the same misconduct, Count IV should still be dismissed because only one of these events, the traffic stop, plausibly alleges a constitutional deprivation of rights. *See Lincoff v. Town of Topsfield*, No. CV 23-12125-BEM, 2026 WL 323349, at *11 (D. Mass. Feb. 6, 2026) (noting that *Monell* liability is contingent upon an underlying constitutional violation, and finding none). For the reasons stated above, neither the Boat search nor the wellness check were a deprivation of constitutional rights at all, where the Tisbury police were authorized to search Plaintiff's property under the Community Caretaker doctrine and did not seize any of Plaintiff's property. *See Lachance v. Town of Charlton*, 990 F.3d 14, 31 (1st Cir. 2021) (holding plaintiff's *Monell* claim failed "because there was no underlying constitutional violation"). Plaintiff's claim is therefore still based on a single incident of misconduct, which is insufficient to plead a *Monell* claim.

12

**E. The Defamation claim in Count V against Sgt. St. Pierre fails because the pleading does not Specifically Allege the Defamatory Statement, nor How or When the Statement was made.**

Count V asserts a Defamation claim against the Martha's Vineyard Times (the "Vineyard Times"), Edgartown Chief of Police Bruce McNamee, and Tisbury Sgt. Edward St. Pierre based on the Vineyard Times publication of an article about the FedEx package and Boat incident. However, the only involvement in this publication that Sgt. St. Pierre was allegedly involved in was calling the Plaintiff to inform him of the article, and providing the Vineyard Times with "some" of the information that was published. Compl., ¶ 40-41. This is not enough to state a claim for defamation against Sgt. St. Pierre.

"To prove defamation, the plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss." *Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192 (D. Mass. 2015).[6] For defamation claims, a plaintiff must at least allege "the essential 'who, what, when, and where,'" of the alleged defamatory statement to give the defendant "fair notice of the factual basis" for the claim. *Id.*, at 193; *see also Kelleher v. Lowell Gen. Hosp.*, 98 Mass. App. Ct. 49, 53 n. 2 (2020) ("To properly allege defamation, a plaintiff must specifically identify the allegedly false statement.").

Plaintiff's claim falls short of stating a claim for defamation against Sgt. St. Pierre. For one, Mr. Gorman only alleges that Sgt. St. Pierre "provided [the Vineyard Times] with some of the false and defamatory information about Mr. Gorman that was ultimately published in the

---

[6] The Tisbury Defendants do not assert that Plaintiff must meet the heightened pleading standard for defamation claims required in state court. *See Andresen v. Diorio*, 349 F.3d 8, 17 (1st Cir.2003). Nonetheless, the Plaintiff must still satisfy the basic pleading standards of Fed. R. Civ. P. 8(a). *Grant*, 126 F. Supp. 3d at 193.

article." Compl., ¶ 41. Second, the Plaintiff does not state even an approximation of when Sgt. St. Pierre provided such information to the Vineyard Times, nor how he did so (i.e. verbally in person, electronically via email, etc.). Third, and perhaps most importantly, Mr. Gorman does not even allege the gist of what Sgt. St. Pierre stated to the Vineyard Times, nor what parts of any communication were false and defamatory. Nor is it plausible that Sgt. St. Pierre would have been the one to communicate to the Vineyard Times the allegedly false information about charging Mr. Gorman with theft, since that information would have come from the Edgartown police.

Having failed to specifically allege facts in support of his defamation claim, it must be dismissed. *See Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 576 (D. Mass. 2015) (dismissing defamation claim because "Plaintiff's count for defamation provides woefully little detail," including "the means or approximate dates of publication."); *Grant,* 126 F. Supp. 3d at 193 (D. Mass. 2015) (dismissing defamation claim because "Plaintiff alleges no facts from which one could reasonably infer that Target agents or employees published a false statement regarding the Plaintiff, or that they did so either negligently or intentionally."); *3137, LLC v. Town of Harwich*, D. Mass., No. 21-CV-10473-DJC (Mar. 15, 2023 Order) (dismissing defamation claim where pleading "[does] not identify [defendant's] actual statement to" third party); *Wade v. Tri-Wire Eng'g Sols., Inc.,* D. Mass., No. CV 20-10523-LTS (Mar. 5, 2021 Order) (merely speculating that defamatory statements occurred is insufficient to plead defamation claim).

## CONCLUSION

WHEREFORE, the Tisbury Defendants respectfully request the Court allow this motion, and dismiss with prejudice Counts I, II, IV, and V against them, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

14

Respectfully submitted,

The Defendants,
TOWN OF TISBURY,
OFFICER PATRICK SOUZA in his Individual Capacity;
and SERGEANT EDWARD ST. PIERRE in his Individual
Capacity;
By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

/s/ *Patrick T. Ciapciak*
Matthew J. Hamel, BBO No. 706146
Patrick T. Ciapciak, BBO No. 705221
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
mhamel@piercedavis.com
pciapciak@piercedavis.com

Dated: April 13, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April 2026, this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as follows:

*Pro Se* Plaintiff, via first class mail:
James F. Gorman IV
375 Highland Street
Weston, MA 02493
and electronically:
wagglespetcare@icloud.com
emeraldlogisticsma@gmail.com

/s/ *Patrick T. Ciapciak*
Patrick T. Ciapciak, Esq.

15