UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES F. GORMAN, IV,

      Plaintiff,

v.

TOWN OF TISBURY; OFFICER PATRICK
SOUZA in his individual capacity; SERGEANT
EDWARD ST. PIERRE in his individual capacity;
JOHN DOES I, II, III, IV, in their individual
capacities; MARTHA'S VINEYARD TIMES;
CHIEF BRUCE MCNAMEE in his individual
capacity,

      Defendants.

C.A. NO. 1:25-cv-12869-MJJ

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS BRUCE MCNAMEE'S MOTION TO DISMISS**

Plaintiff James F. Gorman, IV ("Plaintiff"), proceeding *pro se*, respectfully opposes the motion to dismiss Plaintiff's Second Amended Complaint filed Defendant Bruce McNamee. The Defendant is not a rube.  He was the Chief of Police for the Town of Edgartown. Despite knowing better, Defendant told the press that a summons had been issued for Plaintiff's arrest. None had. Of course, what Defendant successfully and improperly conveyed to the world was that Plaintiff was a criminal, despite the fact that no charges ever issued against the Plaintiff. Defendant's false statement was published in the local newspaper. Now, having made a textbook defamatory statement, the Defendant attempts to wriggle out of his liability by claiming that his false statement was (despite all common sense) true and that he, as a public official, is allowed to accuse people of crimes for which no probable cause exists.

1

**BACKGROUND**

Mr. Gorman is a seasonal resident of Martha's Vineyard. [Doc. No. 21 at ¶ 17]. In May 2023, he worked as a mechanic and contracted to perform maintenance services for Budget/Avis vehicles. *Id.* Budget leased its vehicles to FedEx contractors, so Mr. Gorman often interacted with FedEx employees and contractors in the course of his maintenance work. [*Id.* at ¶ 18]. On May 20, 2023, Mr. Gorman discovered a damaged FedEx package on Airport Road in Edgartown after leaving the Martha's Vineyard FedEx location. [*Id.* at ¶ 20]. Mr. Gorman contacted Mark Bergeron, an employee of the FedEx contractor on Martha's Vineyard, to report the package. [*Id.* at ¶ 21]. Mr. Bergeron determined that the package was an outgoing return and asked Mr. Gorman to bring it to the regional sorting hub in Middleborough the next time he went there, as Mr. Gorman traveled to that location on a regular basis to service vehicles there. [*Id.* at ¶¶ 22–23]. Mr. Gorman placed the package inside a large yellow hardtop tote that he used to store his tools and brought the tote to his boat in Tisbury Harbor when he finished work that evening. [*Id.* at ¶¶ 24–25]. Mr. Gorman had plans in Boston that evening and took the ferry to the Cape. [*Id.* at ¶ 25].

Unbeknownst to Mr. Gorman, while he was off the island his boat had come untied and was found drifting in the harbor. [*Id.* at ¶ 29]. Mr. Gorman was informed by a friend that his boat had been found in the harbor and that the Tisbury Police had it. [*Id.* at ¶ 29]. When Mr. Gorman arrived at the Tisbury police department, Ofc. Souza questioned him about his boat and the contents of the closed yellow tote, including the FedEx package. [*Id.* at ¶¶ 29–30]. When Mr. Gorman retrieved his boat, he discovered that several items were missing from the yellow tote, including several of his tools and the Fedex package. [*Id.* at ¶ 33]. Ofc. Souza also asked Mr. Gorman about the FedEx facility, its security, cameras, delivery protocols and where packages

are stored, even though Mr. Gorman was not employed by FedEx and had no reason to know much of this information. [*Id.* at ¶ 32]. Several days later, Sgt. St. Pierre called Mr. Gorman to ask him many of the same questions about the package and FedEx. [*Id.* at ¶ 34]. Mr. Gorman was never charged with a crime relating to the FedEx package. [*Id.* at ¶ 36]. Yet, for some reason, the Martha's Vineyard Times published an article in June 2023 falsely stating that Mr. Gorman had been charged with larceny over the situation. [*Id.* at ¶ 37]. In the article, the Martha's Vineyard Times reported that Bruce McNamee, Chief of the Edgartown Police, had informed the Times that Mr. Gorman had been issued a summons for larceny. [*Id.* at ¶ 39].

## ARGUMENT

### A.    Standard Of Review

Dismissal for failure to state a claim is only appropriate when a complaint fails to allege enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the plausibility of the plaintiff's claims, the court must "accept as true well-pleaded facts in the complaint and draw all reasonable inferences in the [plaintiff's] favor." *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 780 (1st Cir. 2014). Moreover, when the court reviews a complaint filed *pro se*, the "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Here, this Court is not just given the option to liberally construe Plaintiff's *pro se* complaint; it is required to do so. *See Ahmed v. Roseblatt*, 118 F.3d 886, 118 (1st Cir. 1997) (citing *Rockwell v. Cape Code Hosp.*, 26 F.3d 254, 255 (1st Cir. 1994)). The well-pleaded allegations in the Second Amendment Complaint provide Defendant McNamee fair notice of the claims Plaintiff asserts against him, and the facts alleged sufficiently

and plausibly establish those claims. The only question before the court is whether Plaintiff's complaint, taken as true, plausibly states a claim for relief. It does, and Defendant McNamee's motion to dismiss should be denied accordingly.

**B.    Chief McNamee's Statements Were False And Defamatory.**

This case presents defamation in its purest, textbook form: A police chief insinuates to a newspaper that criminal charges had been brought against Plaintiff, when none had and none have ever been since.  To be clear, at the time the Defendant made his statement to the newspaper, his statement was wholly false. Plaintiff's defamation claim against Defendant Bruce McNamee is plausibly alleged under the liberal *pro se* pleading standard. Establishing a defamation claim under Massachusetts law requires: "(1) that the defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that the defendant was at fault in making the statement; and (4) that the statement either caused the plaintiff economic loss or is actionable without proof of economic loss." *Orkin v. Albert*, 162 F.4th 1, 13 (1st Cir. 2025) (citing *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012)). Mr. Gorman sufficiently alleges facts to establish all four elements of his defamation claim. [Doc. No. 21 at ¶¶ 39, 86].

First, Defendant McNamee falsely stated to Defendant Martha's Vineyard Times that the Edgartown District Attorney's office issued Gorman a summons for one count of larceny when no such summons had been issued. [Doc. No. 21 at ¶¶ 39, 86]. Because an imputation of crime is defamatory *per se*, Defendant McNamee's statement qualifies as defamatory under the second prong. *Jones v. Taibbi*, 400 Mass. 786, 792 (1987). Third, Defendant McNamee was at fault for negligently issuing a false statement regarding Mr. Gorman directly to Defendant Martha's Vineyard Times when he had complete access to the status of the ongoing investigation. [Doc.

4

No. 21 at ¶¶ 39, 86]; [*see* Doc. No. 37 at 7] (explaining that Defendant McNamee has access to the status of investigations). Finally, Defendant McNamee's statements are actionable without proof of economic damages because a "statement that charges a plaintiff with a crime exempts the plaintiff from the general rule that defamation claimants must show economic damages." *See Orkin*, 162 F.4th at 14. Defendant McNamee contests only whether Plaintiff adequately pleaded the second element. [Doc. No. 37 at 6–7].

Defendant McNamee argues that true or "substantially true" statements will not support a defamation claim, but his statements were neither. *Reilly v. Assoc. Press*, 59 Mass. App. Ct. 764, 770 (2003); [*see* Doc. No. 37 at 6]. On or about June 15, 2023, Defendant Martha's Vineyard Times published that, "Edgartown Police Chief Bruce McNamee told The Times this week that… the District Attorney's office... have, as of Thursday, issued Gorman a summons for one count of larceny under $1,200." [Doc. No. 21 at ¶ 37]. This statement was not true or substantially true. It was indisputably false. The District Attorney's Office had not issued any summons or charged Mr. Gorman. [*See* Doc. No. 37-1 at 2–3]. The substantial truth doctrine protects imprecision, not fabrication.

The Edgartown District Court docket sheet, which Defendant McNamee ironically attached to his Motion to Dismiss, reports a precise timeline demonstrating falsity. [*See id.* at 2.] An application for a criminal complaint against Mr. Gorman was not filed until August 15, 2023– two months after Defendant McNamee made false statements to the Defendant Martha's Vineyard Times. [*Id.*] Further, the notice that Defendant McNamee references was sent to all the parties similarly could not have been issued prior to August 15, 2023. [*Id.*] Critically, the

5

ultimate disposition of the case was "Complaint not to Issue," entered December 5, 2023, after the magistrate found no probable cause. [*Id.*][1]

Defendant McNamee argues that "even if Chief McNamee's statements were made prior to the issuance of the summons or filing of charges, the statements cannot be considered defamatory," because the fact that his "statements were made prior to the issuance of a summons or filing of charges" constitutes only a "minor inaccuracy." [*See* Doc. No. 37 at 7]. But Defendant McNamee's statement did not contain a minor inaccuracy; it was a complete lie. Defendant McNamee's statement contains a temporal element that forecloses any claim of minor inaccuracy; he stated that a summons had previously been issued when, indisputably, it had not. [Doc. No. 21 at ¶¶ 39, 86]. Moreover, Defendant McNamee's statements do not shed their defamatory character at the time they were made merely because subsequent events occurring two months later happen to loosely align with them. At the time he lied to the newspaper, Defendant McNamee had no crystal ball telling him his lie would someday become true, nor should we allow public officials to make false statements and file criminal complaint applications that fail to issue simply to clear up their defamation.

The case law that Defendant McNamee cites is not compelling. [*See* Doc. No. 37 at 7]. First, Defendant McNamee relies on *Jones v. Taibbi* to suggest his statements do not qualify as defamatory because they are not substantially inaccurate. *See* 400 Mass. 786, 795 (1987); [Doc. No. 37 at 7]. However, the inaccuracy in *Jones* was regarding the specific nature of a charge that was *actually* issued—not whether any charge existed in the first place—and was against a person that was *actually* arrested. *See Jones*, 400 Mass. at 788. The differences in this case are stark: Mr.

---

[1]     The Massachusetts District Court Standards of Judicial Practice explains that the "primary objective of the complaint procedure in non-arrest cases is to determine whether to authorize a criminal complaint to prosecute the accused for alleged criminal acts." Since no probable cause was found during that process, no criminal complaint was formally issued against Mr. Gorman. [*See* Doc. No. 37-1 at 2–3].

Gorman was neither arrested nor charged, making Defendant McNamee's statements substantially inaccurate. [Doc. No. 21 at ¶¶ 39, 86]; *see Jones*, 400 Mass. at 795. In the eyes of the law, there was no probable cause to charge Plaintiff with larceny. The point of the probable cause standard is to set a minimum bar to protect the innocent from baseless criminal allegations. *See Albright v. Oliver*, 510 U.S. 266, 297 (1994) ("[T]he probable-cause requirement serves valuable societal interests, protecting the populace from the whim and caprice of governmental agents[.]").

Additionally, Defendant McNamee argues under *Reilly v. Associated Press* that "a factual statement need not state the precise truth" and that a "minor inaccuracy will not support a defamation claim." 59 Mass. App. Ct. 764, 770 (2003); [Doc. No. 37 at 7]. Defendant McNamee's statement—that Gorman had been criminally charged and that a summons was issued for larceny—is a substantially more serious communication that is not the kind of "minor inaccuracy" that *Reilly* describes. *See Reilly*, 59 Mass. App. Ct. at 770; [Doc. No. 37 at 7]; [Doc No. 21 at ¶¶ 39, 86]. Defendant McNamee's inclusion of quotes from *Reilly* without any legal analysis are not persuasive, as there is nothing in the case that would suggest his materially false statements were minor. *See id.*; [Doc. No. 37 at 7]. An allegation that a person is accused of a crime, when that person was not accused is not a minor inaccuracy.

Defendant McNamee's statements are false and without minor inaccuracies that would warrant dismissal at this stage of the litigation. Reviewing the Complaint in the light most favorable to Mr. Gorman, he plausibly alleges that Defendant McNamee's statements were defamatory.

C.    **Chief McNamee's Statements Are Not Conditionally Privileged.**

In order to be conditionally privileged, Defendant must have made an accurate report of the case against Plaintiff.  He did not. Instead, he failed to check his facts and flippantly announced to the community to which the Plaintiff belongs a false statement about Plaintiff. Defendant McNamee additionally argues that even if Mr. Gorman plausibly alleges facts to state a defamation claim against him that Defendant McNamee is entitled to conditional privilege for statements made in the course of his official duties as a public official. [Doc No. 37 at 7-8]. However, Defendant McNamee's reference to *Yohe v. Nugent*, among other cases, contradicts his own argument regarding the privilege's application. *See* 321 F.3d 35, 40 (1st Cir. 2003); [Doc No. 37 at 7]. The privilege that Defendant McNamee is trying to invoke "allows those who fairly and accurately report certain types of official or governmental action to be immune from liability for claims arising out of such reports." *Yohe*, 321 F.3d at 40 (internal quotations omitted). Further, to "qualify for the [privilege] the report must be a fair and accurate portrayal of the official action." *Yohe*, 321 F.3d at 42. In *Yohe*, the court considered "unrefuted statements of fact." *Id.* Here, Defendant McNamee made false, refutable statements that could not have possibly updated the public on action taken against Mr. Gorman since, in reality, no action had been taken. [Doc No. 21 at ¶¶ 39, 86]. Defendant McNamee argues that he qualifies for the privilege because he was informing the media about the "results of an ongoing investigation" but he did not, at any point, convey accurate information about that investigation. [Doc No. 37 at 7]; [Doc No. 21 at ¶¶ 39, 86].  Defendant McNamee's statements go beyond the privilege's protection and he cannot benefit from the privilege as a defense. *See Yohe*, 321 F.3d at 42.

Moreover, even if a conditional privilege were to apply here, this privilege can be defeated by showing that the defendant abused it if "the defendant published the defamatory

8

statements with knowledge of their falsity or with reckless disregard of the truth". *Lawless v. Estrella*, 99 Mass. App. Ct. 16, 24 (2020). The Second Amended Complaint plausibly alleges that Defendant McNamee either made definitive charging statements that imputed criminal behavior upon Mr. Gorman with reckless disregard for their accuracy or that he was speaking outside of his capacity as a public official because he was commenting on an investigation of which he had no knowledge. [Doc No. 21 at ¶¶ 39, 86]. Far from establishing the truth of his statements, Mr. Gorman's Edgartown District Court docket raises a genuine question about what Chief McNamee actually knew when making those statements to the press. [Doc No. 21 at ¶¶ 39, 86]; [Doc No. 37-1 at 2-3]. The court's ultimate finding of no probable cause lends further credence to the inference that Defendant McNamee was recklessly making announcements that imputed criminality. [Doc No. 37-1 at 2-3]. The alleged facts plausibly suggest that Defendant McNamee entertained serious doubts as to the truthfulness of his statements. [Doc No. 21 at ¶¶ 39, 86].

Mr. Gorman has pleaded facts sufficient to plausibly suggest that Defendant McNamee abused the conditional privilege such that dismissal of his defamation claim is not warranted.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant Bruce McNamee's motion to dismiss in its entirety.

Dated:        May 18,  2026                    Respectfully submitted,
                                               JAMES F. GORMAN IV, *Pro Se*
                                               */s/ James F. Gorman IV*
                                               James F. Gorman IV
                                               375 Highland Street
                                               Weston, MA 02493
                                               Phone: 617-899-2083
                                               Email:
                                               emeraldlogisticsma@gmail.com

9

**CERTIFICATE OF SERVICE**

I, James F. Gorman, IV, hereby certify that on May 18, 2026, I filed the above Opposition by uploading it to CM/ECF. Once uploaded to CM/ECF, the document will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants.

/s/ James F. Gorman IV
James F. Gorman IV
375 Highland Street
Weston, MA 02493
Phone: 617-899-2083
Email:
emeraldlogisticsma@gmail.com

10